NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RANBIR GUJRAL and DANIELLE EMERSON, on behalf of themselves and the Putative Class,<br><br>　　　　　　　　Plaintiffs,<br>　　　v.<br>BMW OF NORTH AMERICA, LLC and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT,<br>　　　　　　　　Defendant. | Civil Action No.: 19-cv-20581<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.　INTRODUCTION**

This matter comes before the Court on defendant BMW of North America, LLC's ("Defendant")[1] motion to dismiss (ECF No. 11, "MTD") plaintiffs Ranbir Gujral and Danielle Emerson's ("Plaintiffs") putative class-action complaint (ECF No. 1, "Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs opposed Defendant's motion (ECF No. 15, "Opp."), and Defendant replied (ECF No. 16, "Reply"). The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion to dismiss is denied.

---

[1] Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") was named as a defendant in the initial complaint but has since been dismissed from this action without prejudice by way of joint stipulation. ECF No. 37.

## II. BACKGROUND

### a. Factual Background

Plaintiffs bring the instant putative class action on behalf of purchasers of certain BMW vehicles (the "Class Vehicles") that purportedly are susceptible to catching fire as a result of an allegedly defective battery cable (the "Fire Defect"). Plaintiffs claim that these fires occur without warning and result in extreme safety risk to the Class Vehicles, their owners, and any surrounding property. Compl. ¶¶ 1–2. Plaintiffs assert that Defendants knew or should have known about the Fire Defect prior to selling the Class Vehicles, and moreover, that Defendants concealed this risk to Plaintiffs and failed take appropriate remedial action while Plaintiffs owned and operated the Class Vehicles. *Id*. ¶¶ 4, 6, 8–12, 48–50, 64. Instead, Plaintiffs aver that Defendant sold and serviced the Class Vehicles without warning to Plaintiffs despite Defendant's "exclusive knowledge" that the vehicles contained the Fire Defect. *Id.* ¶¶ 6, 62, 64. Plaintiffs argue that had they known about the Fire Defect, they would not have purchased or leased the Class Vehicles (or would have paid substantially less for them due to the increased fire risk). *Id.* ¶¶ 53–55, 58–63. Accordingly, this action arises out of Defendant's allegedly defective design, manufacture, and warranting of the Class Vehicles, as well as their allegedly misleading promotion of the Class Vehicles' purported safety and dependability. *Id.* ¶ 2.

Plaintiff Gujral, a Connecticut resident, purchased his Class Vehicle in September or October of 2013, purportedly relying on Defendant's promotion of the vehicle's high quality and outstanding safety record. *Id.* ¶¶ 17, 23–24. Defendant allegedly did not disclose the Fire Defect to Gujral prior to his purchase, nor did Gujral receive a recall notice for his purportedly defective battery cable. *Id.* ¶¶ 25–26. On April 12, 2017, one week after his warranty expired, Gujral's

2

Class Vehicle allegedly suffered a catastrophic fire. *Id.* ¶ 28.[2] Plaintiff Emerson, a North Carolina resident, allegedly purchased her certified pre-owned Class Vehicle in February 2015, relying on Defendant's advertisements regarding the safety, reliability, and high performance of its cars. *Id.* ¶¶ 18, 33–34. Five months later, Emerson's vehicle allegedly experienced a catastrophic fire as a result of a "thermal event." *Id.* ¶¶ 35, 37. Emerson claims that she never received a recall notice for her vehicle, although she learned after the incident that other BMW models had been recalled for battery cable defects resulting in unexpected fires. *Id.* ¶ 38. Plaintiffs aver that Defendant had knowledge of the Fire Defect as early as 2006, yet repeatedly declined to include the Class Vehicles in any of its prior recalls despite purportedly near-identical defects. *Id.* ¶ 65–67.

Plaintiffs initiated this action on November 21, 2019, primarily asserting that Defendant breached warranties, defrauded consumers by failing to disclose the Fire Defect, and misleading Plaintiffs as to the safety of their Class Vehicles. The Complaint alleges: violations of the New Jersey Consumer Fraud Act, N.J.S.A. §56:8-2, *et seq.* ("NJCFA") (Counts 1 and 2); breaches of express warranty (Counts 3, 7); breaches of implied warranty (Counts 4, 8, 9); breach of written warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ("MMWA") (Count 5); violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110b(a) ("CUTPA") (Count 6); violation of the North Carolina Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("NCUDTPA") (Count 10); and unjust enrichment (Count 11). Compl. ¶¶ 81–192. On January 24, 2020, Defendant filed the instant motion to dismiss Plaintiff's putative class-action complaint pursuant to Rule 12(b)(6). *See* MTD. Plaintiffs filed an opposition on

---

[2] Defendant allegedly issued warranties to each owner or lessee of the Class Vehicles covering "defects in materials or workmanship" for four years or 50,000 miles. Compl. ¶ 71–72. Plaintiffs assert that "[i]n many if not most" instances, the Fire Defect does not manifest until after the expiration of the warranty and Defendant has knowledge of this fact. *Id.* ¶ 73.

February 10, 2020 (*see* Opp.), to which Defendant replied on March 13, 2020 (*see* Reply). The Court will address each of Defendant's arguments in turn below.

### III. LEGAL STANDARD

**Federal Rule of Civil Procedure 12(b)(6)**

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### IV. DISCUSSION

**a) Primary Jurisdiction**

Defendants first move to dismiss this action on grounds that this Court should defer to the primary jurisdiction of the National Highway Traffic Safety Administration ("NHTSA"), a government agency with federal authority to investigate and remediate motor-vehicle safety defects. MTD at 1. The primary jurisdiction doctrine may apply where a claim is originally cognizable in federal court, but enforcement of the claim requires the resolution of issues within the "special competence of an administrative body." *McQueen v. BMW of N. Am., LLC*, No. 12–

6674, 2013 WL 4607353, at *3 (D.N.J. Aug. 29, 2013).  The Third Circuit considers four factors in determining whether to refer a case to the primary jurisdiction of an agency:  (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.  *Id.* at *4 (citation omitted).

Applying these factors, the Court finds that the NHTSA does not maintain primary jurisdiction over Plaintiffs' instant Complaint.  Under the first factor, Plaintiffs' consumer fraud and warranty claims are "squarely within the conventional experience of judges and court systems," and resolving the key issues of these claims does not require the expertise of the NHTSA.  *Id.*; *Cohen v. Subaru of Am., Inc.*, No. 12–844, 2022 WL 721307, at *37 (D.N.J. Mar. 10, 2022).  Similarly, under the second factor, Plaintiffs' claims are not particularly within the NHTSA's discretion.  In fact, "common law and warranty remedies have been explicitly preserved by the authorizing statute, indicating that this case falls squarely outside the domain of the NHTSA."  *McQueen*, 2013 WL 4607353, at *4 (citing 49 U.S.C. § 30103(d), (e)).  The third factor also disfavors the NHTSA's primary jurisdiction, because Defendant "has not identified any NHTSA rulings that a ruling from this Court might undermine or contradict."  *Cohen*, 2020 WL 721307, at *37.  While determination of the fourth factor is somewhat less clear given the seemingly ongoing status of the NHTSA's recall process, "the NHTSA does not have a mechanism by which Plaintiff could be awarded damages, which pushes this factor in Plaintiff's favor."  *McQueen*, 2013 WL 4607353, at *5.  Accordingly, the Court declines to invoke the primary jurisdiction doctrine and will not refer this matter to the NHTSA.

### b) Choice of Law

The Court need not decide whether New Jersey consumer fraud law applies to Plaintiffs or a proposed nationwide class at the motion to dismiss stage in this litigation. *See* MTD at 12–16. While New Jersey's choice of law principles apply to this matter since federal courts with diversity jurisdiction must apply the choice of law principles of the forum state, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941), the Court need not address the choice of law arguments at this juncture. "Applying the factors necessary to determine choice of law . . . is a very fact-intensive inquiry." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (postponing choice of law analysis "until the parties present a factual record full enough"). The choice of law analysis, therefore, has "routinely been found to be premature at the motion to dismiss phase of a class action lawsuit." *In re Volkswagen Timing Chain Product Liability Litigation*, No. 16–2765, 2017 WL 1902160, at *10 (D.N.J. May 8, 2017); *see also Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, No. 12–6590, 2013 WL 1431680, at *5 (D.N.J. Apr. 9, 2013) (choice of law analysis on motion to dismiss premature); *In re Samsung DLP Television Class Action Litig.*, No. 07–2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009) (same). Here, the Court requires a more developed factual record to make a choice of law conclusion, and thus declines to determine whether Plaintiffs or a nationwide class can pursue claims under the NJCFA.

### c) Class Certification

Similarly, Defendant's motion to strike class certification (*see* MTD at 17–19) is premature. Courts throughout the Third Circuit have routinely declined to hear premature arguments regarding class certification in similar circumstances. *See Sisolak v. Ford Motor Co.*, No. 18–1182, 2019 WL 3503057, at *5 (D.N.J. July 31, 2019) ("The Court denies Defendant's

Motion to Strike. . . as premature and finds the class certification analysis more appropriate for a later stage of the litigation."); *see also Neuss v. Rubi Rose, LLC*, No. 16-2339, 2017 WL 2367056, at *10 (D.N.J. May 31, 2017) (quoting *Landsman & Funk PC v. Skinder–Strauss Assoc.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011) ("Motions to strike, however, are generally disfavored in this circuit at the motion to dismiss stage, and the Third Circuit has acknowledged that there are 'rare few cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'"); see also *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 707 (D.N.J. 2013) ("[N]umerous cases in this District have emphatically denied requests to strike class allegations at the motion to dismiss stage as procedurally premature."). Accordingly, because the issue of whether Plaintiffs can satisfy the class certification requirements is a fact-intensive question, the Court declines to strike Plaintiffs' allegations at this stage.

### d) Breach of Express Warranty

Defendant argues that Plaintiffs' breach of express warranty claims must fail because the warranties at issue cover only manufacturing defects and do not extend to the type of design defect alleged in Plaintiffs' Complaint. MTD at 19–20. In opposition, Plaintiffs contend that they have sufficiently alleged potential manufacturing defects covered by the applicable warranties. Compl. ¶ 3 ("This [Fire] Defect is inherent in the design *and/or manufacture* of the Class Vehicles.") (emphasis added); Opp. at 20–21. Regardless, it is "premature at this stage to dismiss Plaintiffs' express warranty claim on the grounds that it is based on defective design as opposed to defects in material or workmanship." *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 14–3722, 2015 WL 4591236, at *19 (D.N.J. July 29, 2015*); see also Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 883 (D.N.J. 2020) ("Courts in this district have previously refused to apply a distinction between a defect in design and a defect in materials or workmanship at the pleadings

stage of litigation.") (internal quotation omitted); *Alin v. Am. Honda Motor Co. Inc.*, Civ. 08–4825(KSH), 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) ("At the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives.").[3] Accordingly, at present, construing these claims in the light most favorable to Plaintiffs, the Court will not dismiss Plaintiffs' claims for breach of express warranty for failure to plead a valid manufacturing defect.

Defendant also moves to dismiss the express warranty claims on grounds that Plaintiff Gujral's vehicle suffered damage outside of the agreed upon warranty period. MTD at 21–24. Nevertheless, Plaintiffs argue that the claims survive due to the alleged unconscionability of the express warranties. *See Henderson v. Volvo Cars of N. Am., LLC*, No. 09–4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) (finding that an action brought outside the express warranty period could survive a motion to dismiss where plaintiff sufficiently claimed unconscionability). Plaintiffs assert unconscionability based on Defendant's exclusive knowledge and concealment of the defect, unequal bargaining power between the purchaser and the retailer/manufacturer, and lack of meaningful choice in setting the terms of the warranty. Compl. ¶¶ 111–13. Courts have found that plaintiffs may establish unconscionability at the pleading stage based upon these allegations. *See Henderson*, 2010 WL 2925913, at *9 (concluding that plaintiffs sufficiently

---

[3] Defendant's contrary authority is distinguishable or inapplicable. For example, the Third Circuit in *Coba v. Ford Motor Co.* affirmed a finding of a design defect *at the summary judgment stage*, not on a motion to dismiss. 932 F.3d 114, 123 (3d Cir. 2019). In fact, earlier in the *Coba* litigation, Judge Debevoise denied a motion to dismiss, reasoning that "it is unclear whether the Fuel Tank Defect is a design defect or a defect in materials or workmanship, and the Court need not resolve the issue at the pleading stage." *Coba v. Ford Motor Co.*, No. 12–1622, 2013 WL 244687, at *6 (D.N.J. Jan. 22, 2013).

pleaded unconscionability at the motion to dismiss stage by alleging lack of "meaningful choice" in setting the warranty, a "gross disparity in bargaining power" between defendants and the class members, and that defendants had knowledge that the part would fail when sold); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 (same); *In re Samsung DLP Television Class Action Litig.*, 2009 WL 3584352, at *5 (D.N.J. Oct. 27, 2009) (same); *Payne v. Fujifilm U.S.A., Inc.*, No. 07–385, 2007 WL 4591281, at *5 (D.N.J. Dec. 28, 2007) (noting that plaintiff adequately pleaded unconscionability by specifically alleging that defendant knew, or should have known, of the alleged defect in the product and that defendant failed to disclose same to members of the class).

Here, Plaintiffs have adequately pleaded that Defendant knew about the Fire Defect as early as 2006 and misleadingly concealed the defect from Plaintiffs. Compl. ¶¶ 62–65. Further, Plaintiffs have sufficiently alleged "a gross disparity in bargaining power" and "no meaningful choice" in the warranty negotiation. *Id*. ¶ 112; *see Skeen v. BMW of N. Am., LLC*, No. 13–1531, 2014 WL 283628, at *14 ("It is not conclusory to state that a consumer purchasing a car has less bargaining power than the manufacturer and that he had no meaningful choice in setting the terms of the warranty."). Accordingly, the Court will not dismiss Plaintiffs' claims for breach of express warranty.[4]

---

[4] The Court is not declaring the warranties unconscionable at this juncture; but rather is finding that Plaintiffs have met their burden on pleading. "[U]nconscionability is highly fact dependent and so is not appropriate for determination on a motion to dismiss." *Skeen*, 2014 WL 283628, at *15. *See also Gelis v. Bayerische Motoren Werke Aktiengesellschaft,* No. 17-cv-07386, 2018 WL 6804506, at *6 (D.N.J. Oct. 30, 2018) ("But if a court thinks a contractual clause may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect.") (internal quotation omitted); *Cooper v. Samsung Electronics America, Inc.*, 2008 WL 4513924, at *3 (D.N.J. Sept. 30, 2008) ("[M]uch of the information required to decide the issue of unconscionability is either not properly before the court . . . or not sufficiently developed by discovery" and is an issue "more suitable for decision at summary judgment").

9

### e) Breach of Implied Warranty

Plaintiffs claim that Defendant breached its implied warranty by concealing knowledge of the Fire Defect and continuing to sell and service the Class Vehicles to consumers in an allegedly unmerchantable condition. Compl. ¶¶ 117–20. "Under an implied warranty of merchantability, a manufacture[r] warrants to deliver a product that is reasonably suitable for the ordinary uses it was manufactured to meet." *Greene v. BMW of N. Am.*, No. 11–04220, 2013 WL 5287314, at *2 (D.N.J. Sept. 17, 2013) (citing *Green v. G.M.C.*, 2003 WL 21730592, at *6 (N.J. Super. Ct. App. Div. July 10, 2003)). "In the context of a car, this warranty is satisfied when the vehicle provides safe and reliable transportation." *Green*, 2003 WL 21730592, at *6. According to the Complaint, the Fire Defect allegedly caused the Class Vehicles to suddenly stop running or catch fire without warning, resulting in an extreme safety risk. Compl. ¶¶ 1–2. Both Gujral and Emerson specifically assert that their Class Vehicles unexpectedly suffered a "catastrophic fire." *Id.* at ¶¶ 27, 35–36. Plaintiffs' allegations effectively give rise to a plausible inference that the Fire Defect poses a safety risk sufficient to violate an implied warranty. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *15 (finding plaintiff sufficiently pleaded an implied warranty claim where he alleged that his vehicle's defect "led to failure of the vehicle in general"); *Greene*, 2013 WL 5287314, at *3 (finding plaintiff sufficiently pleaded an implied warranty claim where he alleged his vehicle's tires were prone to "catastrophic failure."). Moreover, "while the safety risk alleged here may be of a different nature than the risks alleged in other vehicle-defect cases from this District," whether the Fire Defect "posed enough of a safety risk to actually hamper the Class Vehicles' ability to provide safe, reliable transportation is ultimately a question of fact to be

10

resolved at summary judgment or by a jury."[5] *George v. Jaguar Land Rover N. Am. LLC*, No. 20–17561, 2021 WL 5195788, at *8 (D.N.J. Nov. 8, 2021).  Accordingly, the Court denies Defendant's motion to dismiss the breach of implied warranty claims.

### f) Breach of Warranty under the Magnuson-Moss Warranty Act

Plaintiffs assert that Defendant breached express warranties in violation of the MMWA, 15 U.S.C. § 2301 *et seq*.  Compl. ¶¶ 121–31.  Under the MMWA, "a consumer who is damaged by the failure of a supplier ... to comply with any obligation ... under a written warranty [or] implied warranty ... may bring suit for damages and other legal and equitable relief ... (B) in an appropriate district court of the United States" subject to exceptions not raised here. 15 U.S.C. § 2310(d).  Thus, the MMWA creates a federal cause of action for state law express and implied warranty claims.  Here, Plaintiffs base their MMWA claims on the underlying state law claims for breach of express warranty.  Compl. ¶¶ 126–28.  As this Court has determined the sufficiency of Plaintiffs' express warranty claims at the pleading stage, dismissal of this MMWA claim is not warranted.

### g) Gujral's CUTPA Claim

Defendant argues Gujral's CUTPA claim is time-barred under the CUTPA's three-year statute of limitations period, which it asserts began running when the vehicle was sold in 2013. MTD at 28–29.  Plaintiffs, however, allege that Connecticut courts recognize the continuing violation doctrine (Compl. ¶¶ 48–51), which functions to toll the CUTPA's three-year statute of limitations in situations in which a plaintiff alleges a "continuing course" of deceptive conduct by

---

[5] The Court need not conduct a choice of law analysis to determine, as Defendant argues, whether Plaintiff must allege privity between the Plaintiffs and the Defendant as manufacturer of the Class Vehicles to sustain a breach of implied warranty claim. *See, e.g.*, *Opheim v. Aktiengesellschaft*, No. 20–02483, 2021 WL 2621689, at *9 (D.N.J. June 25, 2021) (finding that a determination on privity in a breach of implied warranty claim is "unsuitable for adjudication on a Rule 12(b)(6) motion.").

11

Defendant. *Bartold v. Wells Fargo Bank, N.A.*, No. 14–865, 2015 WL 7458504, at *4–5 (D. Conn. Nov. 24, 2015). Plaintiffs point to Defendant's "knowing and active concealment" of the Fire Defect and accompanying safety concerns despite "a continuing duty to disclose to Plaintiff and other members of the Class the true character, quality, and nature" of the Class Vehicles. Compl. ¶¶ 49–50. Thus, because Plaintiffs' Complaint sufficiently alleges that the statute of limitations may be tolled under the continuing violation doctrine, the Court concludes that it is premature to decide whether the CUTPA claim is time-barred on this motion to dismiss. *See Robinson v. Dep't of Motor Vehicle,* No. 16–1148, 2017 WL 2259767, at *3 (D. Conn. May 23, 2017) ("[B]ecause Robinson's Complaint contains facts sufficient to plausibly allege that equitable tolling may apply, the court concludes that it would be premature to decide the time-barring question at this motion to dismiss stage."); *Bartold*, 2015 WL 7458504, at *3–6 ("Asserting a statute of limitations defense in a pre-answer motion to dismiss is especially difficult where a continuing course of conduct might apply, as the continuing course of conduct doctrine is conspicuously fact-bound.") (internal quotation omitted).[6]

### h) Emerson's NCUDTPA Claim

Defendant argues Emerson's claim is time-barred under the NCUDTPA's four-year statute of limitations, which it asserts began to accrue when Emerson purchased her vehicle in February 2015. MTD at 30–31. The Court agrees with Plaintiffs, however, in holding that it is premature to dismiss Emerson's claim because the Complaint sufficiently alleges that the limitations period

---

[6] Defendant's argument that Gujral has not adequately pleaded proximate cause under the CUTPA is without merit. Plaintiffs' Complaint specifically alleges that Gujral relied upon advertisements and other marketing materials touting Defendant's high quality and outstanding safety record, and that if not for Defendant's concealment, he would not have purchased the vehicle or would have paid significantly less. Compl. ¶¶ 24–25. Such if sufficient at this stage to adequately plead causation.

12

may be tolled. Under North Carolina law, "[t]he fraudulent concealment tolling doctrine exists to prevent a defendant from concealing a fraud until after the statute of limitations had run out." *Wheeler v. BMW of N. Am. LLC*, 534 F. Supp. 3d 527, 535 (W.D.N.C. 2021). Here, Plaintiff alleges that Defendant was aware of the Fire Defect beginning in at least 2006, and fraudulently and repeatedly concealed that fact from Emerson. Compl. ¶¶ 6, 36–38, 48–51. *See Wheeler*, 534 F. Supp. 3d at 535 (holding that plaintiff asserted facts sufficient to toll the statute of limitations where she alleged BMW's knowledge of a defect, BMW's failure to repair the defect, and BMW's reassurances that her vehicle was "normal" and not defective). Accordingly, construing the factual allegations supporting tolling in the light most favorable to Plaintiffs, the Court will not dismiss Emerson's complaint as time-barred. *Willis v. Tritle*, No. 17–345, 2019 WL 938889, at *5 (W.D.N.C. Feb. 26, 2019) ("The tolling of the applicable statute of limitations is an issue which may be subject to resolution at the summary judgment stage but, if necessary, at trial."); *Jenkins v. Ball*, No. 14–537, 2014 WL 5308193, at *1 (M.D.N.C. 2014) ("Because the petition and the petitioner's brief raise factual questions about equitable tolling inappropriate for resolution at the motion to dismiss stage, the motion should be denied."); *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d. 311, 332 (M.D.N.C. 2002) ("[T]he Court finds that this type of factual determination is inappropriate when deciding a motion to dismiss under Rule 12(b)(6).").

  **i) Unjust Enrichment**

  Lastly, Defendant argues that Plaintiffs' unjust enrichment claims should be dismissed for lack of privity under New Jersey law, and for inability to plead unjust enrichment when a valid contract exists under Connecticut and North Carolina laws. MTD at 31–33. Defendant's arguments are without merit. Courts in this District have held that a manufacturer that advertises its products directly to consumers, as alleged here (Compl. ¶¶ 2, 21, 24, 34, 59), may be liable for

unjust enrichment even if the consumer purchases the product from an intermediate retailer. *See, e.g.*, *Gelis*, 2018 WL 6804506, at *10. *See also DeFrank v. Samsung Elecs. Am. Inc.*, No. 19–21401, 2020 WL 6269277, at *24 (D.N.J. Oct. 26, 2020) ("[I]t is clearly not the case that New Jersey law prohibits unjust enrichment simply because the parties are not in privity"); *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 199 (D.N.J. 2012). Furthermore, Courts in Connecticut and North Carolina have recognized that at the motion to dismiss stage, unjust enrichment may be pleaded in the alternative, as it is here, even where a valid contract exists. *Sparrow Sys., Inc. v. Priv. Diagnostic Clinic, PLLC*, 2014 WL 7592501, at *8 n.4, (N.C. Super. Ct. Dec. 24, 2014) ("[A]lthough Plaintiff will not ultimately be able to recover under both an express and implied contract theory, Plaintiff is not foreclosed from properly pleading these claims in the alternative in its Complaint."); *United Steel, Inc. v. Haynes Const. Co.*, 2006 WL 164812 at *3 (Conn. Super. Ct. Jan. 4, 2006) ("Although in the present case [plaintiff] will not be able to recover under both the contract and unjust enrichment, it may advance these theories in the alternative until it has gathered sufficient facts to determine which theory more properly applies"). Here, Plaintiffs sufficiently allege that Defendant benefited financially from its alleged breach of warranty, misrepresentations, and fraud. Compl. ¶¶ 185–92. Thus, Plaintiffs have adequately pleaded an unjust enrichment claim.[7]

---

[7] To the extent Defendant argues Emerson's unjust enrichment claim is time barred under North Carolina law, the Court declines to dismiss Emerson's claim as she has sufficiently alleged that her claim may be tolled by Defendant's alleged concealment of the Fire Defect. Opp. at 34–35.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 11) is denied. An appropriate Order accompanies this Opinion.

**DATED**: August 23, 2022

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**
