UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RANBIR GUJRAL and DANIELLE EMERSON, on behalf of themselves and the Putative Class,

        Plaintiffs,

v.

BMW OF NORTH AMERICA, LLC and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT,

        Defendants.

No. 19-cv-20581 (MEF)(AME)

**OPINION and ORDER**

\* \* \*

For the purposes of this brief Opinion and Order, the Court assumes familiarity with the facts and procedural history of the case.

\* \* \*

Two cars were destroyed in fires. See Motion for Class Certification, Exhibit 30 (ECF 73-26), at 87:19 to 88:20; id., Exhibit 31 (ECF 73-27), at 66:20 to 67:6.

The owners[1] of each car came to believe the fires were caused by battery defects. See id., Exhibit 31, at 68:8-11; see also Complaint (ECF 1) ¶¶ 1, 25-28; Reply Brief in Support of Motion for Class Certification ("Reply Brief") (ECF 78) at 2-3 & n.1.

---

[1]  Ranbir Gujral and Danielle Emerson.

So they sued the manufacturer[2] and its parent company,[3] and they did so on behalf of a putative class. See Complaint ¶ 1.

From here, the individual car buyers are "the Plaintiffs," and the manufacturer and its parent company are, collectively, "the Defendants."

\* \* \*

The Plaintiffs now move to certify a nationwide class, as well as some other classes in the alternative. See Motion for Class Certification (ECF 73-2) at 1-2.

The Court's preliminary views as to a critical aspect of the motion are set out below.

\* \* \*

Some background first.

On a motion for class certification, a number of standards are on the table.

These are mainly set out in Federal Rules of Civil Procedure 23(a) and 23(b).

But when a party seeks to certify a class under Rule 23(b)(3),[4] another requirement is folded into the mix. See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592-93 (3d Cir. 2012).

Namely, "ascertainability": "class members [must] be currently and readily ascertainable based on objective criteria." In re Niaspan Antitrust Litig., 67 F.4th 118, 129 (3d Cir. 2023) (cleaned up); see also Byrd v. Aaron's Inc., 784 F.3d 154, 162 (3d Cir. 2015) ("Ascertainability functions as a necessary prerequisite (or implicit requirement) because it allows a trial court effectively to evaluate the explicit requirements of Rule 23."); Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013) ("Class ascertainability is an essential prerequisite of a class action[.]") (cleaned up).

The two key elements of ascertainability, as alluded to above:

---

[2] BMW of North America, LLC.

[3] Bayerische Motoren Werke Aktiengesellschaft.

[4] As here. See Motion for Class Certification at 26; see also Complaint ¶ 75.

Is the proposed class "defined with reference to objective criteria"?  Hargrove v. Sleepy's LLC, 974 F.3d 467, 469 (3d Cir. 2020) (cleaned up).

And is there "a reliable and administratively feasible mechanism for determining" who is part of the proposed class?  Id. at 469-70 (cleaned up).

The core logic of the ascertainability requirement: if the measure is not defined in a crisp and factual way (if it is not "objective"), or if there is no easy-to-use and reliable measuring stick (an appropriate "mechanism for determining") --- then the hoped-for advantages envisioned by Rule 23 are lost.  Instead of an efficient reckoning with the merits, class-action litigation will spin off costly and time-consuming procedural fights, "mini-trials" about the most basic question --- who is in the case in the first place, who is appropriately included in the proposed class.  See Marcus, 687 F.3d at 593.

\* \* \*

Focus now on this case.

Ascertainability is a problem for the Plaintiffs' class certification motion.

They have the burden.  See Byrd, 784 F.3d at 163; Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 356 (3d Cir. 2013); Marcus, 687 F.3d at 593-94.

But as to ascertainability's second criteria --- as to the "mechanism for determining" who is in the proposed class and who is out, see Hargrove, 974 F.3d at 469-70 --- the Plaintiffs have not done enough.

The facts here make this clear.  Look to them now.

\* \* \*

The Plaintiffs propose the following nationwide class for certification:

> The Class is comprised of Plaintiffs and all other individuals and entities (the "Class") that owned or leased BMW vehicles containing defective battery cable connectors that may come [loose] over time and may overheat or cause a fire in the vehicle or result in a no-start condition, often with smoldering or

3

>melting at the junction box (herein "Defective Vehicles").

Motion for Class Certification at 1; see also id. at 17.

Is the class "currently and readily ascertainable"? In re Niaspan, 67 F.4th at 129.

The Plaintiffs have not shown that the answer is yes.

To see why, boil things down.

The proposed class covers owners of cars that were recalled.

And the proposed class also covers owners of cars that were not recalled.[5]

Say the first group includes proposed class members A, B, and C. And the second group includes proposed class members D and E.

How to ascertain that D and E are appropriately placed in the class, that their cars are defective in the ways enumerated in the definition of the proposed class?

---

[5] How to know this? Most basically because the proposed class does not limit itself to recalled cars. See Motion for Class Certification at 1. And because the Complaint makes the same point, too. See Complaint ¶ 1 ("Numerous vehicles are impacted by this defect, as [the Defendants] ha[ve] over time issued recalls and then expanded the recalls to encompass ever more models and model years. However, the affected vehicles also include models which have never been recalled but which have exhibited the [battery defect][.]"). In addition, the named Plaintiffs' cars were not subject to any recall. The Plaintiffs say this in their depositions. See Motion for Class Certification, Exhibit 30, 86:2-20; id., Exhibit 31, 20:4-9. And their cars were not listed in any of the notices of the recalls in the record. Compare id., Exhibit 32 (2013 BMW 238xi), and id., Exhibit 31, at 58:14-16 (2011 BMW 528i), with Brief in Opposition (ECF 75), Exhibits 3-4, 6-8 (notices of recall and other technical documents); see also id., Exhibits 5, 9 (explaining later versions of previous recalls). Named plaintiffs must be in the proposed class. See E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403 (1977); Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974). That the named Plaintiffs here did not have cars subject to a recall underscores the key point: the proposed class is not limited to those cars that have been recalled.

4

Maybe the idea is that D and E will submit affidavits that say so.

But the general rule is that affidavits cannot, alone, be used to clear the bar. There needs to be something extra, an added layer of evidence.

A database, for example, that adds in a dollop of hard-edged corroboration. See, e.g., Byrd, 784 F.3d at 170 ("[T]he plaintiffs' proposed reliance on affidavits alone, without any objective records to identify class members or a method to weed out unreliable affidavits, could not satisfy the ascertainability requirement."); Marcus, 687 F.3d at 594 ("We caution, however, against approving a method that would amount to no more than ascertaining by potential class members' say so."); see also Carrera, 727 F.3d at 308 ("Depending on the facts of a case, retailer records may be a perfectly acceptable method of proving class membership.").

Or some records that can be cross-referenced with the affidavits. See Hargrove, 974 F.3d at 480; City Select Auto Sales Inc. v. BMW of N. Am. Inc., 867 F.3d 434, 441-42 (3d Cir. 2017); Byrd, 784 F.3d at 171.[6]

---

[6] Affidavits alone do not generally make the cut even when they speak only to something objective and narrow. In Carrera v. Bayer Corp., 727 F.3d 300 (3d Cir. 2013), for example, a plaintiff sued on behalf of a putative class claiming that a pharmaceutical company falsely and deceptively advertised one of its products. See id. at 304. As to ascertainability, the plaintiff proposed, among other things, "using affidavits of class members attesting to their purchases of [the product]." Id. at 308. But the Third Circuit held that affidavits would not be enough on their own. See id. at 309-12. And moreover: here, in this case, what would affidavits need to say? If the answer is something about, say, "overheat[ing]," that might create its own issues --- even if there were some records to link up to that assertion. The reason: class criteria need to be "objective." See Hargrove, 974 F.3d at 477. But is it objective to swear in an affidavit as to whether a car was "overheat[ing]"? (To be sure, there are cases that suggest that a simple and straightforward affidavit may be allowed to carry more of the load when its content "does not necessarily require individualized fact-finding." City Select, 867 F.3d at 442; see also Byrd, 784 F.3d at 171-72. In the just-quoted case, for example, the affidavit answered a question with an on-off switch

5

But what is that added layer of evidence here?

Information indicating that cars owned by A, B, and C have been recalled could maybe count as the necessary non-affidavit evidence.[7]

But as to cars owned by D and E, cars that have **not** been subject to recall --- no evidence seems to be put forward by the Plaintiffs beyond a hypothesized flurry of affidavits.

And where records run out --- where what is left is therefore the bare say-so of proposed class members --- certification is not generally appropriate.[8]

\*   \*   \*

Under Rule 23, courts have "discretionary authority to 'reshape the boundaries and composition of the [proposed] class.'" Shelton v. Bledsoe, 775 F.3d 554, 564 (3d Cir. 2015) (quoting Tobias Barrington Wolff, Discretion in Class Certification, 162

---

of an answer: was an unsolicited fax received? City Select, 867 F.3d at 442. The question of whether a car was "overheat[ing]" would seem to be a good deal more subjective and more subtle than that.)

[7] For now, the Court expresses no view on this question.

[8] Take Marcus v. BMW of North America, LLC, 687 F.3d 583 (3d Cir. 2012). There, the plaintiffs proposed a class of New Jersey owners and lessees of certain cars that had "run-flat tires . . . [that] ha[d] gone flat and been replaced[.]" Id. at 592. As to that class, the district court granted certification. See id. The court of appeals vacated the certification and remanded for further fact-finding by the district court. See id. at 594. One issue: the defendant-car company did not have certain records in its possession. See id. at 594. And to the extent the defendant did have records, they were incomplete. See id. at 593-94. Namely, the class definition covered cars that had "run-flat tires . . . [that] ha[d] gone flat and been replaced[.]" Id. at 592. But the records could not capture the cars that had tires that were replaced somewhere other than at the defendant's dealers. See id. at 594. And that, per the Third Circuit, made a meaningful difference. "[T]he class is not limited to those persons who took their vehicles to [the defendant's] dealers to have their tires replaced." Id.

6

U. Pa. L. Rev. 1897, 1925 (2014)); accord Braidwood Mgmt., Inc. v. EEOC, 70 F.4th 914, 933-34 (5th Cir. 2023) ("District courts . . . may modify the classes to fit the requirements better and should not dismiss an action purely because the proposed class definition is too broad.") (cleaned up); Burns v. United States R.R. Retirement Bd., 701 F.2d 189, 191-92 (D.C. Cir. 1983) ("The original definition and certification ... may require alteration or amendment as the case unfolds."); see generally 1 Newberg and Rubenstein on Class Actions § 3:3 (6th ed. 2025).

Here, the Court exercises its discretion-to-reshape, but it does so earlier in the process than is typical. Rather than first certifying and then modifying, the Court here has not yet reached the certification question.[9] But it has set out, above, why modification would become necessary if the Court were to certify the proposed nationwide class.

Proceeding in this order will allow the Plaintiffs to propose a tailored class (should they wish to) and, importantly, will allow the parties to then file class certification briefs that aim their efforts in a practical direction --- at whatever the new proposed class might be, not the nationwide one that does not work as currently formulated.[10]

\*   \*   \*

---

[9] At this point, certification remains an open question.

[10] This approach might not make sense in other cases. A defendant that makes a winning ascertainability argument should generally reap the fruits of its efforts --- denial of the plaintiff's class certification motion. But this case is different. The Defendant here did not make an ascertainability argument. The Court here has raised the issue sua sponte, as it is permitted to. See Maneely v. City of Newburgh, 208 F.R.D. 69, 76, 78 (S.D.N.Y. 2002); Thomas v. Clarke, 54 F.R.D. 245, 249 (D. Minn. 1971); see generally 2 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 6:17 at 633 (4th ed. 2002) ("The fact that the class is defined inadequately or too broadly is not a fatal defect. Courts may redefine the classes themselves, if they possess adequate information."); Wolff, Discretion in Class Certification, 162 U. Pa. L. Rev. at 1924-25 (describing some examples of courts exercising authority sua sponte to certify classes other than ones proposed by plaintiffs).

7

The Plaintiffs shall indicate in a brief letter, to be filed on or before August 28, whether they will set out a narrowed nationwide proposed-class definition.

If no, the Court will deny the Plaintiffs' class certification motion as to the nationwide class.

If yes, the Court will administratively terminate the current class certification motion and set a briefing schedule for a new motion.

IT IS on this 15th day of August, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.